IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE (C.A.A.), | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-01229-N |
| | § | |
| HYATT CORPORATION, *et al.*, | § | |
| | § | |
|    Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the motions to dismiss filed by Defendants Hyatt Place Franchising, L.L.C. ("Hyatt") [36], BDKNR Hospitality LP ("BDKNR") [37], Lotustel Group LLC ("Lotustel") [38], Firewheel Hotel Ltd. ("Firewheel") [58], and Holiday Hospitality Franchising LLC ("HHF") and Six Continents Hotel, Inc. ("SCH") [35]. Because Plaintiff Jane Doe has failed to plead sufficient facts to state a plausible claim for relief, the Court grants the motions to dismiss. The Court further grants Doe leave to amend her complaint.

## I. ORIGINS OF THE DISPUTE

This case involves claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.*, against various hotel entities. Jane Doe is a sex trafficking survivor. Pl.'s Second Am. Compl. ("SAC") ¶ 26 [33].[1] She was trafficked from May 21, 2014, through May 25, 2014, at three different hotel locations: a Hyatt Place

---

[1] For purposes of these motions, the Court assumes the truth of all well-pleaded facts in the SAC.

MEMORANDUM OPINION AND ORDER – PAGE 1

in Garland, Texas, operated by Defendant Firewheel, a Holiday Inn in Addison, Texas, operated by BDKNR, and a Holiday Inn in Garland, Texas, operated by Lotustel. *Id.* Doe's trafficker controlled her through financial manipulation and her dependency on drugs, forcing her to engage in commercial sex acts for her trafficker's financial benefit. *Id.* ¶ 29. When she tried to escape, Doe's trafficker made her take drugs so that she could not leave. *Id.* ¶ 31.

Defendant Hyatt is a franchisor of Hyatt-branded hotel properties and is the franchisor for the Garland Hyatt Place operated by Firewheel. *Id.* ¶¶ 13–14. Defendants HHF and SCH are franchisors of IHG-branded properties and are the franchisors of the Addison and Garland Holiday Inn properties operated by BDKNR and Lotustel respectively. *Id.* ¶ 17.

Sex trafficking is a widely known and pervasive issue in the hospitality industry. *Id.* ¶¶ 36–37. In response to this, various governmental and nonprofit entities have developed materials used to educate the industry on best practices for identifying and responding to sex trafficking. *Id.* ¶¶ 38–39. One best practice involves learning to identify warning signs or "red flags" of sex trafficking, including seeing individuals show signs of fear, physical abuse, restraint, or confinement; signs of malnourishment, poor hygiene, fatigue, sleep deprivation, and unusual behavior; avoiding eye contact or interaction with others; lacking control over money or ID; having few or no personal items of luggage; appearing to be with a significantly older "boyfriend" or in the company of older males; possession of bulk condoms or lubricant; possession of multiple cell phones; and possession or use of large amounts of cash or prepaid cards. *Id.* ¶ 40.

Various news reports and online reviews describe the existence of sex trafficking or prostitution at other Hyatt and IHG hotels. *Id.* ¶¶ 57, 59, 62. Doe alleges, on information and belief, that other victims were trafficked at the specific Hyatt and Holiday Inn locations where she was trafficked, and that these other victims exhibited "red flags" of trafficking, including "paying with cash or prepaid cards, having high volumes of men who not [sic] registered guests in an out of their room at unusual times, arriving with few possessions for extended stays, and other signs." *Id.* ¶¶ 68, 77. Doe and her trafficker specifically exhibited some alleged "obvious signs" of trafficking, including: (1) paying for the rooms with cash; (2) renting two rooms at a time; (3) keeping housekeeping away with a "do not disturb" door sign despite staying for multiple days; (4) preventing housekeeping from entering the room while frequently placing towels outside the door and asking for fresh towels and sheets; (5) the trafficker lingering in the hotel or parking lot while Doe was with a "john"; (6) Doe being dressed in provocative clothing and walking johns past the front desk; (7) heavy foot traffic in and out of Doe's room involving non-hotel-guest men; and (8) five to six johns entering the hotel per day at odd hours. SAC ¶¶ 83, 89.

Doe asserts TVPRA claims against all Defendants. SAC ¶¶ 186–214. Defendants now move to dismiss all claims against them for failure to state a claim.

## II. Rule 12(b)(6) Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007). To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, in "deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that the "district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand").

### III. THE COURT GRANTS DEFENDANTS' MOTIONS TO DISMISS

Doe brings TVPRA claims against all defendants under a financial beneficiary theory. SAC ¶¶ 193–202. She also brings claims under a perpetrator liability theory against Firewheel, Lotustel, and BDKNR, *id.* ¶¶ 187–92, and claims for vicarious liability against Hyatt, SCH, and HHF. *Id.* ¶¶ 203–14. The Court takes each of these theories in turn.

#### A. The Court Dismisses Doe's Beneficiary Liability Claims

Section 1595 of TVPRA provides the following civil remedy for victims of sex trafficking:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). To state a claim under a section 1595 financial beneficiary theory, Doe must allege facts from which it can be reasonably inferred that Defendants "(1) 'knowingly benefitted financially or by receiving anything of value,' (2) from participation

in a venture, (3) they 'knew or should have known has engaged in' sex trafficking" under section 1591. *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 426 (N.D. Tex. 2021) (alteration omitted) (quoting *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *4 (N.D. Cal. 2020)).

***1. Knowingly Benefitted*** — Doe alleges that Defendants financially benefitted by receiving revenue from renting hotel rooms to Doe's trafficker. SAC ¶¶ 136–37, 152–53. Defendant BDKNR argues Doe must have alleged it knowingly benefitted directly from its participation in a sex-trafficking venture. BDKNR's Mot. 10 [37]. However, this "knowing benefit" element requires "only that the defendant was aware that it was benefitting in some way from its participation in the venture." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 564 (7th Cir. 2023); *see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723–24 (11th Cir. 2021). The benefit need not be the specific result of sex trafficking. *G.G.*, 76 F.4th at 564. Many courts applying this element have found that, in the hotel context, simply renting a room and knowingly receiving value in exchange is sufficient to satisfy this element. *See e.g.*, *E.S.*, 510 F. Supp. 3d at 426–27; *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964–65 (S.D. Ohio 2019); *Doe, (H.E.W.) v. Radisson Hosp., Inc.*, 2025 WL 349556, at *5 (W.D. Tex. 2025), *adopted*, 2025 WL 560708 (W.D. Tex. 2025); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 190–91 (E.D. Pa. 2020); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020). The requirement that the defendant know (or should know) the venture engaged in sex trafficking is a separate element. Thus, the Court concludes that Doe's allegations about receiving revenue in

exchange for renting rooms to Doe's trafficker are sufficient to satisfy the knowingly benefitted element.

2. Participation in a Venture — Next, Doe alleges Defendants have participated in two ventures sufficient to establish liability. First, Doe asserts the hotels participated in a venture through continuous business relationships with the populations of sex traffickers operating out of those hotels. SAC ¶¶ 138–46, 154–62. Second, Doe asserts that the Defendants' franchisor–franchisee relationships are also ventures to which TVPRA liability can attach. *See id.* ¶¶ 147–51, 163–67. Defendants argue these allegations are insufficient to meet the participation-in-a-venture element of TVPRA civil liability. *See* HHF's Mot. 16 [35]; Hyatt's Mot. 11 [36]; BDKNR's Mot. 7; Lotustel's Br. 3 [39]; Firewheel's Mot. 10 [58].

Participating in a venture "does not require actual knowledge of criminal wrongdoing." *G.G.*, 76 F.4th at 559. Nor does it require direct participation in the sex trafficking. *Id.* For beneficiary liability, it is sufficient to show "a continuous business relationship between the participant and the trafficker." *Id.* "Where the participant provides assistance, support, or facilitation to the trafficker through such a 'continuous business relationship,' a court or jury may infer the participant and trafficker have a 'tacit agreement' that is sufficient for 'participation' under Section 1595." *Id.*; *see also Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (Souter, J.) (concluding that participation can be inferred, in part, where trafficker and hotel operators had similar prior dealings). The defendant need not have committed "some overt act that furthers the sex trafficking aspect of the venture" or have "associated" with the sex trafficker "for the purpose of furthering

MEMORANDUM OPINION AND ORDER – PAGE 7

the sex trafficking." *M.A.*, 425 F. Supp. 3d at 968–70 (cleaned up). The ordinary meaning of the statutory language requires a plaintiff to allege that the defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 725.

While some courts have accepted allegations that simply renting rooms or having a franchisor–franchisee relationship is enough to establish a venture under TVPRA,[2] this Court has previously concluded that the alleged beneficiary must "have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction." *Doe (S.M.A.) v. Salesforce, Inc.*, 2024 WL 1337370, at *13 (N.D. Tex. 2024). Simple ineffectiveness at curtailing traffickers is not participation in a venture. *A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 5510267, at *4 (M.D. Fla. 2023). And there must be particular facts connecting the venture to the specific plaintiff's trafficking. *See E.S.*, 510 F. Supp. 3d at 428 (stating the alleged venture must be the "specific venture that trafficked Plaintiff on specific occasions at the specific hotels").

Here, Doe alleges sufficient facts to infer the franchisee defendants — BDKNR, Lotustel, and Firewheel — participated in a venture. But she fails to allege sufficient facts suggesting HHF, SCH, or Hyatt participated in any venture. For the franchisees, Doe does

---

[2] *See, e.g.*, *T.P. v. Wyndham Hotels & Resorts, Inc.*, 2022 WL 17363234, at *11 (S.D. Ohio 2022) ("Here, [franchisor] Defendants were involved in a business venture with the franchisee hotels . . . ."); *C.T. v. Red Roof Inns, Inc.*, 2023 WL 3510879, at *4 (M.D. Fla. 2023) ("[T]o find the existence of a venture, the Court need consider only whether operating hotels is an enterprise involving risk and potential profit. Clearly, it is.").

MEMORANDUM OPINION AND ORDER – PAGE 8

allege that they formed a "continuous business relationship and implicit understanding with the population of sex traffickers operating out of their" hotels, including Doe's specific trafficker. SAC ¶¶ 138–39, 154–55. She further alleges that these traffickers were familiar to hotel staff, and that hotel staff "designated an area of the hotel, in the back of a hallway but near an unlocked door, for traffickers, which facilitated their illegal activities." *Id.* ¶¶ 144, 160. These allegations of ongoing familiarity between hotel staff and a population of traffickers (including Doe's specific trafficker), combined with the specific act of designating an area of the hotel for traffickers to use, bring the actions of staff at the franchisee hotels beyond a simple failure to curtail trafficking and beyond the realm of an ordinary commercial transaction. As such, the conduct of franchisee hotel staff is closer to actual participation in the venture than a simple failure to curtail trafficking. Accordingly, Doe has sufficiently alleged that BDKNR, Lotustel, and Firewheel participated in her trafficking venture.

However, as to the franchisors — HHF, SCH, and Hyatt — Doe's allegations fall short. Doe fails to allege sufficiently that these defendants participated in any venture "beyond what would reasonably be expected in an ordinary commercial transaction." *See Doe (S.M.A.)*, 2024 WL 1337370, at *13. While Doe does allege that hotel staff at the Hyatt and Holiday Inn locations were familiar with the traffickers and designated a specific area for their use, SAC ¶¶ 144, 160, Doe does not allege facts sufficient to impute any culpable actions of franchisee employees to the franchisor. Doe alleges that the franchisors exercise considerable control over the reservation processes, *id.* ¶¶ 104, 124, but that does not impute the non-reservation-related actions of hotel staff to the franchisor defendants.

MEMORANDUM OPINION AND ORDER – PAGE 9

The allegations about the franchisors are much closer to faulting them for "taking ineffective steps to curtail the traffickers," *see A.D.*, 2023 WL 5510267, at *4, and not actual participation in Doe's trafficking venture. *See, e.g.*, SAC ¶ 108 (alleging Hyatt participated in the venture by "[a]dopting, maintaining, and enforcing policies and practices regarding guest identification in a way that facilitated trafficking by allowing traffickers, including Jane Doe's trafficker, to secure rooms without providing their own identifying information"). Accordingly, the Court dismisses the beneficiary claim against HHF, SCH, and Hyatt for failure to allege participation in a venture.

   ***3. Knew or Should Have Known of Doe's Sex Trafficking*** — Next, Doe alleges the Defendants either knew or at least should have known of her sex trafficking based on specific "red flags" she exhibited at the hotels combined with general allegations about sex trafficking issues in the hospitality industry and at other Hyatt and IHG hotels. *See* SAC ¶¶ 53–64, 83–90. Defendants argue that these allegations are insufficient to establish actual or constructive knowledge. *See* HHF's Mot. 6; Hyatt's Mot. 17; BDKNR's Mot. 8; Lotustel's Br. 5; Firewheel's Mot. 14.

   Civil liability under TVPRA requires that the defendant "knew or should have known" the venture has engaged in a criminal TVPRA violation. 18 U.S.C. § 1595(a). This requires the defendant to have at least "constructive knowledge that the venture committed the specific § 1591 violation sued upon in the § 1595 civil action." *Doe (S.M.A.)*, 2024 WL 1337370, at *14. In other words, there must be plaintiff-specific facts

MEMORANDUM OPINION AND ORDER – PAGE 10

to support this element.³  *E.S.*, 510 F. Supp. 3d at 428–29.  General allegations about sex trafficking problems in the hospitality industry are insufficient to put a hotel defendant on notice of the specific plaintiff's trafficking.  *J.C.*, 2020 WL 6318707, at *6.  But they may be relevant, alongside plaintiff-specific facts, to establish a defendant should have known of a TVPRA violation.  *Cf. Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 839 (C.D. Cal. 2021) (considering general and plaintiff-specific facts together in concluding defendant should have known of a violation).

Here, Doe's allegations fail because the plaintiff-specific facts alleged in the Complaint are not sufficient to put any hotel defendant on notice of sex trafficking as opposed to commercial sex generally.  Doe alleges the hotels should have known of her sex trafficking based on various "obvious signs" from her and her trafficker including: (1) paying for the rooms with cash; (2) renting two rooms at a time; (3) keeping housekeeping away with a "do not disturb" door sign despite staying for multiple days; (4) preventing housekeeping from entering the room while frequently placing towels outside the door and asking for fresh towels and sheets; (5) the trafficker lingering in the hotel or parking lot while Doe was with a "john"; (6) Doe being dressed in provocative clothing and walking johns past the front desk; (7) heavy foot traffic in and out of Doe's room involving non-

---

³ Doe contends that plaintiff-specific facts are not required, and that constructive knowledge of some TVPRA violation by the venture as a whole is sufficient. *See, e.g.*, Pl.'s Resp. BDKNR 14 [45].  This position tracks the analysis some other courts have applied. *See, e.g.*, *G.G.*, 76 F.4th at 555–58.  This Court, however, has already rejected this view and concluded that the statute requires facts establishing constructive knowledge of the specific TVPRA violation at issue in the case.  *Doe (S.M.A.)*, 2024 WL 1337370, at *15; *see also E.S.*, 510 F. Supp. 3d at 428–29.

MEMORANDUM OPINION AND ORDER – PAGE 11

hotel-guest men; and (8) five to six johns entering the hotel per day at odd hours. SAC ¶¶ 83, 89. These alleged facts may be sufficient to say an observer should have known of commercial sex. But TVPRA does not prohibit all commercial sex, only that which is procured through "means of force, threats of force, fraud, coercion . . . or any combination of such means." 18 U.S.C. § 1591(a); *see also J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *10 (N.D. Cal. 2020) (requiring Plaintiff to plead facts suggesting defendant should have known of "sex trafficking that violated TVPRA" as opposed to other "nefarious conduct"). Doe's allegations do not suggest that any Defendant here should have known that she was trafficked as a result of force, fraud, or coercion.

This conclusion is underscored by considering cases where courts have found sufficient allegations for constructive knowledge. Courts have found this element met where the plaintiff alleged she had visible physical injuries and pled for help, *M.A.*, 425 F. Supp. 3d at 962, 968, where the trafficker exhibited "coercive and brutal behavior to a physically deteriorating" plaintiff, *Ricchio*, 853 F.3d at 557, or at least where hotel staff observed the plaintiff with "bruising and signs of fear," *Doe (A.R.J.) v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 4224915, at *2, 6 (W.D. Tex. 2024).

Here, Doe does not plead similar facts suggesting force or coercion that would allow the Court to infer that hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution. For this reason, the Court concludes that Doe's allegations are insufficient to establish constructive knowledge of her trafficking. The inclusion of other allegations about the hospitality industry generally, or even other suspicious conduct at the subject hotels, is not enough to establish

constructive knowledge in the absence of sufficient plaintiff-specific facts. Because Doe has failed to allege sufficient facts to establish Defendants had at least constructive knowledge of her trafficking, the Court grants the motions to dismiss Doe's beneficiary claim against all defendants.

### B. The Court Dismisses Doe's Perpetrator Liability Claims

In addition to a beneficiary liability claim, Doe asserts a perpetrator liability claim against the three franchisee defendants — BDKNR, Lotustel, and Firewheel. SAC ¶¶ 187–92. A perpetrator liability claim incorporates the elements of a criminal TVPRA violation under section 1591. *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 728 (E.D. Tex. 2024). Section 1591 states:

> (a) Whoever knowingly—
>
>> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>>
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Thus, while a beneficiary liability claim requires only constructive knowledge of a sex trafficking violation, a perpetrator liability claim requires a higher level

MEMORANDUM OPINION AND ORDER – PAGE 13

of knowledge as to the use of force, fraud, or coercion. *See Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024). Here, the Court has concluded that Doe failed to allege even constructive knowledge of force, fraud, or coercion as to all defendants. Accordingly, she likewise fails to meet the more stringent knowledge requirement of for perpetrator liability. Therefore, the Court grants the motions to dismiss Doe's perpetrator liability claims.

### C. The Court Dismisses Doe's Vicarious Liability Claims

Finally, Doe asserts vicarious liability claims against the franchisor defendants — HHF, SCH, and Hyatt — based on the alleged conduct of their franchisees. SAC ¶¶ 203–14. Hyatt, HHF, and SCH move to dismiss the vicarious liability claims against them on the basis that Doe has failed to state any underlying claim against their franchisees. Hyatt's Mot. 19–20; HHF's Mot. 24–25. "To show vicarious liability, a plaintiff must allege (1) an underlying violation of TVPRA by the defendant's franchisee and (2) that franchisors and their corresponding hotels were in an agency relationship." *Doe, (H.E.W.)*, 2025 WL 349556, at *13 (citing *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021); and *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020)). Because the Court has already concluded that Doe failed to state a claim for an underlying TVPRA violation by any franchisee defendant, the Court grants HHF, SCH, and Hyatt's motions to dismiss the vicarious liability claims against them.

### CONCLUSION

For the reasons above, the Court grants Defendants' motions to dismiss and dismisses Doe's claims without prejudice. The Court further grants Doe leave to amend

MEMORANDUM OPINION AND ORDER – PAGE 14

her complaint within thirty (30) days of this Order. If Doe fails to do so, the Court will dismiss all her claims with prejudice without further notice.

Signed July 15, 2025.

_____
David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 15